## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANDREW SWAINSON,** | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA et al.,** | : | **No. 22-2163** |
| *Defendants* | : | |

### MEMORANDUM

PRATTER, J.                                                                    JANUARY /𝒪, 2023

In 1989, Andrew Swainson was convicted of a murder he did not commit. In 2020, his conviction was vacated after it was discovered that police had fabricated evidence against him and suppressed exculpatory evidence. He now brings § 1983 claims against eight former employees of the Philadelphia Police Department and a *Monell* claim against the City of Philadelphia for unconstitutional misconduct leading to his wrongful conviction. The City and two of the former employees, Detectives James Alexander and Joseph Fischer, moved to dismiss parts of Mr. Swainson's complaint, arguing that (1) the complaint fails to adequately allege detective Fischer's involvement; (2) qualified immunity shields detectives Alexander and Fischer from liability on certain claims; and (3) the complaint does not plead sufficient facts to support a *Monell* claim. For the reasons that follow, the Court grants the motion in part, dismisses Mr. Swainson's Fourteenth Amendment malicious prosecution claims, and denies the motion as to all other counts.

### BACKGROUND

The following facts are taken from Mr. Swainson's amended complaint, which the Court accepts as true for purposes of the motion to dismiss. The amended complaint alleges conduct by several other defendants; the Court focuses only on the allegations against the City of Philadelphia and Detectives Alexander and Fischer.

On January 17, 1988, Stanley Opher was shot in an apparent botched robbery of a West Philadelphia drug house. Before dying from his injuries, Mr. Opher told police officers "they shot me" but did not identify his killers.

Mr. Swainson was an acquaintance of Mr. Opher's who had spent time at the drug house and participated in the drug operation with Mr. Opher, but he was not present at or near the shooting, nor was he connected to the murder in any way. Mr. Swainson cooperated with police, providing an alibi, witness information, and his fingerprints, but the investigating officers, including Detectives Alexander and Fischer, either did not investigate his alibi or destroyed evidence of any investigation after it confirmed Mr. Swainson's innocence.

Instead, Detectives Alexander and Fischer, along with others, fabricated evidence against Mr. Swainson for the murder. They did so by pressuring Paul Presley, a man arrested near the shooting, to identify Mr. Swainson as the shooter in exchange for dropping all charges against him.

Detective Fischer also suppressed evidence that pointed to other suspects. Police reports noted that Mr. Opher was likely killed during an attempted robbery, undermining their theory that Mr. Swainson killed Mr. Opher because of a dispute over their shared drug business. In addition, Detectives Alexander and Fischer had reason to suspect others, including Mr. Presley—who was arrested near the scene—and Allen Proctor, a serial robber of drug houses with a history of violence. Mr. Presley also identified another man, Kevin Pearson, as one of the assailants in an interview with Detective Fischer. Detective Fischer did not pursue any of these leads and focused instead on Mr. Swainson. When Detective Alexander learned that Mr. Swainson was about to leave on a planned vacation to visit family in Jamaica, he accused him of fleeing and used false information to obtain a federal fugitive warrant, which was later used as evidence of Mr. Swainson's guilt. Mr. Swainson was arrested for the murder of Mr. Opher on March 9, 1988.

2

To bolster the case against Mr. Swainson, Detective Alexander pressured another witness, Jackie Morell, into falsely implicating Mr. Swainson in the murder.  Another officer then used other charges against Mr. Presley—who by this point had recanted his earlier identification and testified as to Mr. Swainson's innocence at a preliminary hearing—to coerce him into testifying against Mr. Swainson.

Mr. Swainson was convicted of first-degree murder and sentenced to life in prison on March 1989. More than thirty years later, the Philadelphia District Attorney's Office's Conviction Integrity Unit (CIU) reviewed Mr. Swainson's case and discovered the suppressed exculpatory evidence.  Mr. Swainson's conviction was vacated on June 12, 2020, and all charges against him were dropped on June 18, 2020.

Mr. Swainson sued the City and multiple defendants, including Detectives Alexander and Fischer.  His amended complaint sets out six counts:

Count I: Fabrication of evidence under § 1983;

Count II: Intentional concealment and suppression of exculpatory and impeachment evidence under § 1983;

Count III: Malicious prosecution under § 1983 in violation of the Fourth and Fourteenth Amendments;

Count IV: Civil rights conspiracy under § 1983;

Count V: A *Monell* claim against the City; and

Count VI: Malicious prosecution under Pennsylvania law.

The City of Philadelphia and Detectives Alexander and Fischer filed a motion to dismiss in part, and the Court heard oral argument on the motion.

3

STANDARD OF REVIEW

When evaluating a 12(b)(6) motion to dismiss, the Court "must decide whether the complaint contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Smith v. State Farm Mut. Auto. Ins. Co.*, 506 F. App'x 133, 135–36 (3d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation and internal quotation marks omitted).

In deciding a motion to dismiss, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true," *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994), along with all reasonable inferences that can be drawn from those facts, and must view those facts and inferences in the light most favorable to the nonmoving party, *Revell v. Port. Auth. of New York, New Jersey*, 598 F.3d 128, 134 (3d Cir. 2010). The Court need not, however, accept mere conclusory statements or bald legal conclusions. *Smith*, 506 F. App'x at 136.

DISCUSSION

The City of Philadelphia and Detectives Alexander and Fischer argue that (1) Mr. Swainson has not adequately alleged Officer Fischer's personal involvement; (2) qualified immunity shields Detectives Alexander and Fischer from liability from certain claims; and (3) Mr. Swainson fails to plead the facts required for a *Monell* claim.

**I.    Detective Fischer's Personal Involvement**

A defendant in a § 1983 suit must have "personal involvement in the alleged wrongs" to be liable. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Such personal involvement can be established through either participation, direction, or knowledge and acquiescence. *Id.* At

4

the motion to dismiss stage, the Court must accept as true not only the facts alleged but all reasonable inferences, including inferences of personal involvement that "can be drawn based on the current allegations." *Wright v. City of Philadelphia*, 229 F. Supp. 3d 322, 338 (E.D. Pa. 2017).

Detective Fischer contends that the complaint falls short of this standard because it only alleges that Detective Fischer failed to follow up on other potential leads. This characterization is incorrect. The Amended Complaint alleges that on January 21, 1988, Mr. Presley identified Mr. Pearson as one of the assailants to Detective Fisher inside the Homicide Unit. Am. Compl., Doc. No. 18 at ¶ 63. In other words, Detective Fischer was "aware of the exculpatory evidence pointing to another suspect" and "failed to take any action to prevent the malicious prosecution of [Mr. Swainson] going forward," which courts in this Circuit have held is enough to "establish personal involvement through knowledge and acquiescence." *Alicea v. City of Philadelphia*, No. 22-cv-3437, 2022 WL 17477143, at *3 (E.D. Pa. Dec. 6, 2022). Mr. Swainson has also pled the time and placed of the alleged conduct, which is all that is required at this stage. *Id.*

Detective Fischer protests that Mr. Presley's identification of Mr. Pearson was not exculpatory because (1) Mr. Presley stated that he saw "two men" running from the scene of the crime and (2) Mr. Presley never identified Mr. Pearson as the shooter. In other words, Detective Fischer contends that this identification is not exculpatory because it could have been consistent with Mr. Swainson's guilt.

The Court disagrees. The amended complaint specifically alleges that Mr. Pearson had no connection to Mr. Swainson, meaning Mr. Pearson's involvement would have made it less likely that Mr. Swainson—a stranger—worked with him to commit the murder. The fact that an unrelated person was involved is also exculpatory given that another detective on the case, Officer Miller, had reason to believe that Mr. Opher was killed in an attempted robbery—*i.e.*, by someone

5

unrelated to his and Mr. Swainson's drug business. It is therefore a reasonable inference that Mr. Presley's identification would have been exculpatory, and one the Court must draw in Mr. Swainson's favor at the motion to dismiss stage. The amended complaint adequately pleads Detective Fischer's personal involvement, and so the Court denies the motion to dismiss on this ground.

## II.     Qualified Immunity

Qualified immunity protects government officials, including Detectives Alexander and Fischer, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The right must be clearly established "in light of the specific context of the case, not as a broad general proposition," *Mullenix v. Luna*, 577 U.S. 7, 12 (2015), meaning the Court must "identify the exact contours of the underlying right" with specificity, *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000).

Detectives Alexander and Fischer contend that three of the rights they allegedly violated were not clearly established at the time of Mr. Swainson's arrest and prosecution in 1988: (1) Mr. Swainson's rights under *Brady v. Maryland*; (2) a Fourteenth Amendment right against malicious prosecution; and (3) a right to have officers intervene on Mr. Swainson's behalf to stop his unlawful arrest and prosecution.

### a.   *Brady* Rights

Count II seeks to impose liability on Detectives Alexander and Fischer for "depriv[ing] Mr. Swainson of his clearly established constitutional right to due process of law and to a fair trial by intentionally concealing and deliberately suppressing exculpatory evidence and/or violating their duties under *Brady v. Maryland* and its progeny." As Detectives Alexander and Fischer

correctly point out, however, the applicability of *Brady*'s requirement—to disclose exculpatory evidence—to police officers, rather than merely prosecutors, was not clearly established until 2005, sixteen years after Mr. Swainson's conviction. *See Gibson v. Superintendent of New Jersey Dep't of Law & Pub. Safety – Div. of Police*, 411 F.3d 427, 443 (3d Cir. 2005) (overruled on other grounds). Accordingly, they argue that they are entitled to qualified immunity on this count.

The problem with that argument, however, is that by its own terms the amended complaint is not "limit[ed] to a mere failure to disclose exculpatory and impeachment evidence"—*i.e.*, a *Brady* claim—but alleges more broadly that Detectives Alexander and Fischer "violated [Mr. Swainson's] due process rights to a fair trial by concealing and/or suppressing relevant and material evidence as part of a larger scheme" to frame him for the murder. *Dennis v. City of Philadelphia*, 19 F.4th 279, 290–91 (3d Cir. 2021) (internal quotation marks omitted). And the right to a fair trial, unlike *Brady* rights, was "crystal clear" in 1988. *Alicea*, 2022 WL 17477143, at *4 (citing *Pyle v. Kansas*, 317 U.S. 213, 216 (1942) (holding that "deliberate suppression" of evidence favorable to a defendant violates the constitution)). Thus, "[w]hile qualified immunity may shield defendants from [Count II] to the extent it makes a *Brady* claim, it does not protect against a deliberate suppression of evidence claim and may proceed on that basis." *Id.* Therefore, the Court denies the motion to dismiss this count.

### b. Fourteenth Amendment Malicious Prosecution

Count III seeks to impose liability for malicious prosecution under both Fourth and Fourteenth Amendment theories. The defendants do not argue that the Fourth Amendment theory may proceed. Instead, they point out, correctly, that the existence of a due process right against malicious prosecution under the Fourteenth Amendment remains an unsettled area of law today, meaning it certainly could not have been clearly established in 1988. *Cf. Thomas v. City of*

*Philadelphia*, 290 F. Supp. 3d 371, 380–82 (E.D. Pa. 2018) (noting that while "a procedural due process right against malicious prosecution makes theoretical sense" this is "an unsettled question").

In response, Mr. Swainson argues that what matters for purposes of qualified immunity is not the textual source of the right in question, but rather its contours. *Cf. Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 197 & n.9 (3d Cir. 2021) (holding that, whether an excessive force claim brought by a pretrial detainee arose under the Eighth or Fourteenth Amendments "would not change the outcome because the conduct would violate clearly established law under either standard"). Courts in this Circuit, however, have explicitly rejected this argument. *See Alicea*, 2022 WL 17477143, at *4; *Thomas*, 290 F. Supp. 3d at 382–83. In any event, Mr. Swainson's argument goes to whether a Fourteenth Amendment right against malicious prosecution ought to be recognized today, not whether the right was clearly established over three decades ago.

The Court grants the motion to dismiss as to the Fourteenth Amendment malicious prosecution claim.

### c.  Failure to Intervene

Count IV seeks to impose liability for a "Civil Rights Conspiracy." The defendants argue that this claim should be dismissed to the extent that it alleges a failure to intervene to stop Mr. Swainson's unlawful arrest and prosecution. They point out that failure-to-intervene claims arise "almost exclusively" in the context of excessive use of force. *Cf. Ekwunife v. City of Philadelphia*, 245 F. Supp. 3d 660, 672 (E.D. Pa. 2017), *aff'd*, 756 F. App'x 165 (3d Cir. 2018). As this Court explained, as recently as 2013 "it was not sufficiently clear that reasonable officers would have understood that failing to intervene when confronted with another's fabrication and withholding

of evidence" would violate a person's constitutional rights. *Thorpe v. City of Philadelphia*, No. 19-cv-5094, 2020 WL 5217396, at *11 (E.D. Pa. Sept. 1, 2020).

That may be so, but here, unlike in *Thorpe*, Mr. Swainson has not brought a failure-to-intervene claim. His amended complaint brings a civil rights conspiracy claim and refers to a failure to intervene only as part of the pattern of conduct comprising that conspiracy. As plaintiff, it is Mr. Swainson, not the defendants, who gets to decide how to package his claims, and the Court may not read into the amended complaint a claim that Mr. Swainson did not put there. Therefore, the Court denies this portion of the motion to dismiss.

III.    ***Monell* Claim**

Mr. Swainson also brings a *Monell* claim against the City of Philadelphia, alleging both a custom and a failure-to-train theory of municipal liability. The City argues that the *Brady*, Fourteenth Amendment malicious prosecution, and failure-to-intervene components of the *Monell* claim should be dismissed because these rights were not clearly established in 1988. *See Thomas*, 290 F. Supp. 3d at 387 ("Though no court within the Third Circuit has weighed in, several courts have held that a municipality cannot be deliberately indifferent to a right that is not clearly established."). As discussed above, the rights at issue in Counts II and IV, along with the Fourth Amendment malicious prosecution claim in Count III, were all clearly established at the time; this theory thus provides no basis to dismiss these claims. Any Fourteenth Amendment malicious prosecution right, however, was not clearly established in 1988, and so the Court grants the motion to dismiss the Fourteenth Amendment claim against the City.

The City also challenges the sufficiency of the *Monell* claim's allegations. This is an uphill battle, given that "*Monell* liability is generally not amenable to resolution at the pleading stage."

*3909 Realty LLC v. City of Philadelphia*, No. 21-cv-030, 2021 WL 2342929, at *4 (E.D. Pa. June 8, 2021.

As to the existence of a custom, it is not necessary for a plaintiff to establish affirmative acts: "deliberate indifference, lack of compliance and failure to adhere to . . . standards" may also constitute custom. *A v. Nutter*, 737 F. Supp. 2d 341, 362 (E.D. Pa. 2010). Here, "[t]he Amended Complaint includes sufficient facts to plausibly show that the City had a custom of acquiescing to widespread unconstitutional actions by the [police.]" *Alicea*, 2022 WL 17477143, at *5. The complaint also notes specific affirmative practices that were at the time "so well-settled and permanent as virtually to constitute law," *Bielevicz v. Dubinon*, 915 F.2d 845, 860 (3d Cir. 1990), including:

- Not providing exculpatory evidence in officer activity sheets to prosecutors or defense counsel;
- Using coercive techniques in witness and suspect interviews;
- Fabricating inculpatory evidence, including witness statements and identifications; and
- Concealing and suppressing exculpatory evidence.

The City suggests that the amended complaint is deficient because many of the court cases it cites as evidence of unconstitutional conduct by police post-date Mr. Swainson's arrest and conviction. That may be so, but the complaint does not rest solely on these post-arrest cases. "To show the City had the requisite knowledge of these allegedly pervasive actions," the amended complaint also "cites newspaper articles, government investigations, and "a number of other instances cases of police misconduct," the breadth of which "is highly relevant to the existence of the City's custom of acquiescence." *Alicea*, 2022 WL 17477143, at *5; *see* Am. Compl. at ¶¶ 7,

46–48, 52, 54–56, 62, 64–65, 67, 75–80, 83, 90, 96–99, 101, 105, 130–31, 138. This is sufficient at the motion to dismiss stage.

Mr. Swainson has also alleged a failure-to-train-or-supervise theory, which requires him to show that "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Forrest v. Parry*, 930 F. 3d 93, 106 (3d Cir. 2019). Mr. Swainson has alleged with specificity the City's inadequate disciplinary systems and how the City was aware of repeated constitutional violations but deliberately failed to act. Again, this suffices at the motion-to-dismiss stage. *Cf. Alicea*, 2022 WL 17477143, at *6. Therefore the Court denies the City's motion to dismiss the *Monell* claim.

\* \* \* \* \*

## CONCLUSION

For the foregoing reasons, the Court grants the motion to dismiss as to Mr. Swainson's §1983 and *Monell* claims based on a Fourteenth Amendment malicious prosecution theory and denies the motion as to all other counts and claims. An appropriate order follows.

BY THE COURT:

**GENE E.K. PRATTER**
UNITED STATES DISTRICT JUDGE