IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW SWAINSON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, ET AL. | : | NO.  22-2163 |

**MEMORANDUM**

Padova, J.                                                                                                                                July 2, 2025

Plaintiff Andrew Swainson brought this action pursuant to 42 U.S.C. § 1983 and state common law against the City of Philadelphia and certain police officers arising from his wrongful conviction for the 1988 murder of Stanley Opher.  Plaintiff was convicted in 1989 and imprisoned for more than 30 years.  The City and Defendant Detectives Joseph Fischer and James Alexander (the "Moving Defendants") have brought a Motion in Limine to preclude Mr. Swainson from introducing at trial the testimony and Expert Report of Michael K. Lynch, Mr. Swainson's expert on police practices.  For the reasons that follow, the Motion is denied.

**I.      BACKGROUND**[1]

Mr. Swainson contends that he was wrongfully convicted of the murder of Mr. Opher because police officers (1) falsified evidence that he had fled to Jamaica after Mr. Opher's murder to avoid prosecution; (2) falsified evidence that he had been identified as the person who shot Mr. Opher by an eyewitness to the crime; (3) concealed evidence that could have been used by his trial counsel to impeach prosecution witnesses; (4) concealed evidence of alternate perpetrators; and (5) concealed evidence that would have supported an alternate theory of the

---

[1] See our Memorandum granting in part and denying in part the Motions for Summary Judgment filed by the City of Philadelphia, and Detectives Joseph Fischer, James Alexander, and Manuel Santiago for an extensive recitation of the factual background of the investigation conducted by the police, as well as of Mr. Swainson's prosecution and post-conviction litigation.

reason for Mr. Opher's murder.  One of Mr. Swainson's claims in this case is a municipal liability claim against the City of Philadelphia pursuant to 42 U.S.C. § 1983, which asserts that the City is liable for his wrongful conviction and imprisonment because the Defendant Detectives acted in accordance with City policies and customs when they violated his constitutional rights and because the City failed to properly supervise and discipline the police officers who violated his constitutional rights.  A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  Monell v Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  Rather, to prove a § 1983 claim against a municipality, a plaintiff must demonstrate that his constitutional deprivations were caused by an official policy or custom of the municipality or a failure by the municipality to train, discipline, or supervise its employees.  Id.; see also City of Canton v. Harris, 489 U.S. 378, 388 (1989); Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403-04 (1997); Forrest v. Parry, 930 F.3d 93, 105 (3d Cir. 2019) (citing Estate of Roman v. City of Newark, 914 F.3d 789, 798-99 (3d Cir. 2019)).

Mr. Swainson has produced an Expert Report authored by Michael K. Lynch in support of his municipal liability claim against the City.  (See Lynch Rpt. (Docket No. 91).)  Mr. Swainson also plans to call Mr. Lynch to testify at trial.  Mr. Lynch has 32 years of experience in law enforcement.  (Lynch Rpt. Ex. B at 1.)  He was employed by the Camden City Police Department from 1994 until 2013, serving as an officer/detective (1994-1997), sergeant (1997-2000), command officer (2000-2008), and deputy chief of police (2008-2013).  (Id. at 2.)  Since 2013, Mr. Lynch has been employed by the Camden County Police Department as assistant chief of police (2013-2014), senior policy advisor (2015-2023), and chief of staff (since 2023).  (Id. at 1.)  As chief of staff, Mr. Lynch assists the chief of police in connection with accounting, human resources, procurement, administrative support services, and police records.  (Id.)  In his

2

previous position, as senior policy advisor, he advised the chief of police on day-to-day operations, investigative practices, and operational protocols. (Id.)

Mr. Lynch reviewed the following documents, among others, in the preparation of his Report in this case: deposition transcripts of Detective Santiago, Detective Fischer, and the Assistant District Attorney who prosecuted Mr. Swainson, Judith Rubino; the Philadelphia Police Department's ("PPD") homicide file for Stanley Opher; newspaper articles about police misconduct and corruption in Philadelphia published by the Philadelphia Inquirer, the New York Times, and the Washington Post; pleadings, opinions, and consent decrees in lawsuits brought against the City of Philadelphia for police misconduct; reports by an Integrity and Accountability Officer ("IAO") appointed by the City to assess the Philadelphia Police Department, particularly with respect to the manner in which police misconduct complaints were investigated; and documents related to 25 other cases involving claims of wrongful conviction caused by PPD misconduct, including newspaper articles, pleadings, depositions, court filings, interviews, and homicide files. (Lynch Rpt. at 11-13; Ex. A.) Mr. Lynch opined, based on the documents he reviewed, as follows:

> since the late 1970s, PPD leadership has been on notice that its officers, especially the detectives in its Homicide Division, have routinely violated the most basic legal limitations on law enforcement officer conduct. They have engaged in the outright fabrication of evidence, the coercion of witness testimony while recklessly disregarding the falsity of such testimony, and the suppression and concealment of material evidence. They have also routinely ignored leads pointing to the true perpetrators of criminal offenses. Through repeated publicity about notorious scandals, PPD leadership have learned of this conduct and, in response, have paid lip service to the need for reform. In each instance, however, PPD leadership has failed to implement meaningful changes in practice that remedy and prevent instances of misconduct.
>
> This is most apparent in the longstanding failures of PPD's disciplinary system. Law enforcement agencies cannot secure their employee officers' compliance with legal obligations without the promise of accountability for misconduct. Investigations that give officers the benefit of the doubt and mete out minimal, if

> any, discipline even in cases of gross misconduct, provide officers with the clear message that they can violate established legal and departmental rules with impunity.  As such, the lack of effective discipline fosters a culture of misconduct that leads to the routine violations of civilians' rights under the U.S. Constitution.

(Lynch Rpt. at 27-28.)

Mr. Lynch also specifically addressed evidence that he reviewed with respect to wrongful conviction lawsuits brought against Detective Santiago and the City of Philadelphia by the following:  (1) Anthony Wright, who was convicted of the 1991 rape and murder of an elderly woman based on a coerced confession obtained by Detective Santiago and spent nearly 25 years in prison before his conviction was overturned based on DNA evidence that excluded him as the perpetrator (id. at 15-16); (2) Percy St. George, who was charged with murder and spent 13 months in jail based on a photo identification that Detective Santiago pressured a teenager to make, even though the teenager had not been a witness to the murder (id. at 16-17); and (3) James Dennis, who was convicted of the 1991 murder of a teenage girl in Philadelphia based on eyewitness identifications and was released from prison after 25 years based on evidence that the identifications resulted from improper conduct by Detective Santiago, including the compilation of suggestive photo arrays and the suppression of information regarding other suspects who confessed to the crime (id. at 17).  Mr. Lynch opined, based on this evidence, that Detective Santiago:

> may have engaged in egregious and sometimes illegal activity for years while investigating the PPD's most serious cases, [and] there should be a complete investigation into him and an audit of homicide cases that led to convictions that remain undisturbed.  Such an investigation should address whether Santiago has committed perjury in other cases.  Given the similarity, numerosity, and gravity of the allegations of misconduct in the homicide division during the time periods described[,] the failure to fully investigate the similar allegations of investigative misconduct by detectives within that unit falls short of minimally accepted practices for supervision and discipline and raises serious concerns about PPD's commitment to preventing and disciplining investigative misconduct and protecting the constitutional rights of individuals.

(Id. at 28.) Mr. Lynch also specifically opined regarding the evidence that he has reviewed regarding 25 other wrongful convictions:

> [t]he multiple wrongful convictions outlined above illustrate the clear and foreseeable results of such lack of discipline and, further, confirm[] the absence of effective training and supervision. In the years before the 1988 Opher murder investigation, PPD leadership had notice of multiple homicide arrests and prosecutions that were the result of improper investigative practices, yet they failed to address those practices. The absence of action set the stage for the conduct that caused Andrew Swainson's arrest and prosecution for a crime he did not commit. The persistent failure to address misconduct that continued through the time and after the Opher murder investigation and into the 1990s and 2000s—while Swainson's appeal and postconviction petitions were pending—and, in particular, the failure to address the misconduct of Detective Santiago, only served to ensure Swainson's prolonged period of imprisonment.

(Id. at 28-29.)

## II. LEGAL STANDARD

Federal Rule of Evidence 702, which governs the admissibility of expert testimony provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of the expert testimony has the burden of establishing its admissibility by a preponderance of the evidence. Padillas v. Stork-Gamco, Inc., 186 F.3d 412, 418 (3d Cir. 1999) (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592 n.10 (1993) (add'l citation omitted); see also Mahmood v. Narciso, 549 F. App'x 99, 102 (3d Cir. 2013) (citing In re TMI Litig., 193 F.3d 613, 663 (3d Cir. 1999)).

There are three requirements for the admissibility of expert testimony pursuant to Rule 702, "'qualification, reliability and fit.'" Calhoun v. Yamaha Motor Corp., U.S.A., 350 F.3d 316, 321 (3d Cir. 2003) (quoting Schneider v. Fried, 320 F.3d 396, 405 (3d Cir. 2003)). The Moving Defendants argue that Mr. Lynch's testimony and Report should be precluded from trial because they do not satisfy any of these three requirements.

### III. DISCUSSION

#### A. Qualification

"Qualification requires 'that the witness possess specialized expertise.'" Id. (quoting Schneider, 320 F.3d at 405). The Third Circuit has "'interpreted this requirement liberally,' holding that 'a broad range of knowledge, skills, and training qualify an expert as such.'" Id. (quoting In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994)). The Moving Defendants argue that Mr. Lynch is not qualified to testify as an expert regarding the policies and procedures of the PPD because he has not consulted with any police departments in Pennsylvania or reviewed policies from police departments across the United States. The Moving Defendants, however, fail to explain why consultation with police departments, whether in Pennsylvania or across the United States, should be required of an expert on police policies and procedures and we find that the necessity of such consultation is not self-evident. Moreover, to the extent that familiarity with police practices in other jurisdictions is relevant, Mr. Lynch states in his Report that, in the course of his career, he has "gained familiarity with the practices of a variety of law enforcement agencies around the country, ranging from large to small, during the time period pertinent to this case." (Lynch Rpt. at 4.)

Mr. Lynch has been a law enforcement professional for 32 years and is currently the chief of staff to the Camden County Police Department. (Id. at 1, 3.) He is a graduate of the

Northwestern University School of Staff and Command and the West Point Command and Leadership Program. (Id. at 3.) He has also collaborated and consulted with NYU Law School, the Fraternal Order of Police, and the New Jersey Attorney General's Office. (Id.) Mr. Lynch has investigated hundreds of violent crimes and, as the commander of the Camden City Police Department's Criminal Investigations Division, he "directed and managed the investigation of organized crime syndicates, narcotics, homicide, sexual assault, robbery, aggravated assault, special victims, and property crimes." (Id. at 2.) He has also "formed, planned, and led multi-agency investigative task force operations including collaborations with the FBI, DEA, ATF, U.S. Marshals, Secret Service, federal prosecutors, and state, county, and local law enforcement partners." (Id.) Mr. Lynch has also "managed the investigations of hundreds of police misconduct allegations, including insubordination, failure to police, demeanor complaints, rule infractions, excessive force, untruthfulness, constitutional violations, and negligent behavior." (Id.) He has expertise in criminal investigations, witness interviews, and management and supervision. (Id. at 1.) He has also "researched and drafted policy and procedures for the Camden City Police Department and Camden County Police Department" with respect to: criminal investigations, interviews and interrogation, supervisory practices, and training. (Id. at 2-3.) We conclude that Mr. Lynch has the qualifications to testify as an expert with respect to police practices and procedures.

      B.    Reliability

The "reliability" requirement means that "'the expert's opinion must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his or her belief.'" Calhoun, 350 F.3d at 321 (quoting In re Paoli R.R. Yard PCB Litig., 35 F.3d at 742). "An assessment of 'the reliability of scientific

7

evidence under Rule 702 requires a determination as to its scientific validity.'" Id. (quoting In re Paoli R.R. Yard PCB Litig., 35 F.3d at 742). However, where, as here, the expert is not a scientist, the expert's reliability may need to be assessed by other means. See Roberson v. City of Philadelphia, Civ. A. No. 99-3574, 2001 WL 210294, at *4 n.7 (E.D. Pa. Mar. 1, 2001) ("'Some types of expert testimony will not rely on anything like a scientific method, and so will have to be evaluated by reference to other standard principles attendant to the particular area of expertise.'" (quoting Fed. R. Evid. 702 Advisory Committee Notes, 2000 Amendment)). "'[W]here an expert is proffered to testify regarding non-scientific matters, the [r]elevant reliability concerns [will] focus upon personal knowledge [and] experience of the witness and the methodology used will be applying that experience to the facts of the case.'" Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd. 286 F.R.D. 266, 269-70 (W.D. Pa. 2012) (second, third, and fourth alterations in original) (quoting Jackson v. City of Pittsburgh, Civ. A. No. 07-111, 2010 WL 3222137, at *9 (W.D. Pa. Aug. 13, 2010)) see also Jackson, 2010 WL 3222137, at *11 ("The methodology used by [the expert] in forming his opinions was to apply his personal knowledge and experience to the facts of this case. This type of methodology is permitted in the context of expert testimony offered by a non-scientific expert.").

The Moving Defendants argue that Mr. Lynch's opinions do not satisfy the reliability requirement because he has failed to identify the generally acceptable practices or industry standards that he believes are applicable to the Philadelphia Police Department and that he contends were not met in this case. Mr. Lynch states in his Report that he is familiar with minimally acceptable police practices, which he defines as "the investigative tasks that any competent police investigator must accomplish at each state of a criminal investigation, including eyewitness identification procedures and interviews." (Lynch Rpt. at 4.) Mr. Lynch

further states that the Philadelphia Inquirer published a series documenting violations of these minimally acceptable police practices by Philadelphia police officers through the "fabrication of evidence, coerced statements, suppression and concealment of material evidence, and similar improper police practices."  (Id. at 11.)  Mr. Lynch identifies "the same types of departure[s] from minimally accepted police practices" in this case, specifically "fabrication of evidence, coercion of witnesses, and the concealment and suppression of material evidence."  (Id. at 15.)  We conclude that Mr. Lynch has identified the minimally acceptable police practices which he contends were not met in this case:  not fabricating evidence, not coercing statements, and not suppressing and concealing material evidence.

The Moving Defendants also contend that Mr. Lynch's opinions are not reliable because they depend on the work-product of Mr. Swainson's counsel, specifically pleadings.  They maintain that Mr. Lynch's summary of the facts came solely from the allegations in the Second Amended Complaint.  However, we find that Mr. Lynch's factual recitation does not deviate from the record before us in any material way.  The Moving Defendants also criticize Mr. Lynch's Report because it mentions reports prepared a decade after the Opher murder by the Philadelphia Police Department's Integrity and Accountability Office.  They do not explain why Mr. Lynch's reliance on reports prepared by an agency of the City would render his Report unreliable, nor do they explain why the dates of those reports make them unreliable source material in this case.

The Moving Defendants further contend that Mr. Lynch's Report is unreliable because it discusses work performed by other experts on police practices and procedures in other cases.  However, experts are permitted to rely on the reports of other experts.  See In re: Processed Egg Prods. Antitrust Litig., No. 08-2002, 2016 WL 4582236, at *5 (E.D. Pa. Sept. 1, 2016) ("While

an expert is not permitted to simply 'parrot' the ideas of other experts or individuals, experts are permitted to rely on materials prepared by other experts in developing their own opinions." (citing I.B.E.W. Local Union 380 Pension Fund v. Buck Consultants, Civ. A. No. 03-4932, 2008 WL 2265269, at *3 (E.D. Pa. June 3, 2008))). We find that Mr. Lynch's discussion of the work of other experts in similar cases does not make his Report unreliable.

The Moving Defendants also criticize Mr. Lynch's analysis of 25 homicide investigations conducted by the Philadelphia Police Department that resulted in dismissed prosecutions or vacated convictions. They argue that Mr. Lynch's analysis is not reliable because his opinions are based on "allegations from self-interested plaintiffs and criminal defendants." (Defs. Mem. at 14.) However, Mr. Lynch reviewed considerably more than just the pleadings filed by interested parties in those cases. (See Lynch Rpt. Ex. A at 40-49 (listing all of the materials that Mr. Lynch reviewed in connection with his analysis of other cases that resulted in dismissed prosecutions or wrongful convictions).)

As we mentioned above, in "non-scientific matters, [t]he relevant reliability concerns [will] focus upon personal knowledge [and] experience' of the witness and the methodology used will be applying that experience to the facts of the case." Carnegie Mellon Univ., 286 F.R.D. at 269-70 (alterations in original) (quotation omitted). We find that Mr. Lynch applied his personal knowledge and experience from his 32 years working in law enforcement to the facts of this case, which he learned from his review of the materials listed in Exhibit A of his Report, and we conclude that his Report satisfies the reliability requirement for the admission of expert testimony.

C.   Fit

Fit pertains "primarily to relevance." Meadows v. Anchor Longwall & Rebuild, Inc., 306 F. App'x 781, 790 (3d Cir. 2009) (quotation omitted). "The expert's testimony must fit under the facts of the case so that it will aid the [fact finder] in resolving a factual dispute." Id. (quotation omitted). This element "requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." Id. (quotation omitted). "In other words, expert testimony based on assumptions lacking factual foundation in the record is properly excluded." Id. (citing Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 414 (3d Cir. 2002)).

Moving Defendants argue that Mr. Lynch's Report and testimony should be excluded because his opinions do not fit the facts of this case and are largely legal conclusions. Specifically, Moving Defendants contend that Mr. Lynch's Report does not fit because his summary of the Opher murder investigation is impermissibly based on Plaintiff's interpretation of the evidence and the allegations of the Second Amended Complaint. However, as we mentioned above in our discussion of reliability, Mr. Lynch's summary of the record facts does not deviate from the record before us in any material way.

The Moving Defendants further contend that Mr. Lynch's Report and testimony would not assist the jury because the Report does not provide any information about police policies, practices, or customs that would be relevant to the jury's understanding of the evidence or its determination of the facts of this case, or whether the City deviated from standard practices and customs. However, as we discussed above, in connection with our discussion of reliability, Mr. Lynch has identified the minimally acceptable police practices which he contends were not met in this case, specifically not fabricating evidence, not coercing statements, and not suppressing and concealing material evidence.

The Moving Defendants also argue that Mr. Lynch's Report would not assist the jury because it does not contain any detail regarding how the Philadelphia Police Department's disciplinary system was deficient and does not discuss the specific disciplinary histories of the individual Defendants in this case. Mr. Lynch opines in his Report that the Philadelphia Police Department was deficient because it wholly failed to address improper investigative practices and specifically failed to address Detective Santiago's misconduct. (Lynch Rpt. at 28-29.) Mr. Lynch further opines that Detective Santiago's supervisor should have noticed indicia of misconduct with respect to Mr. Presly's identification of Mr. Swainson as Mr. Opher's shooter and that "supervisors up the chain of command" should have reviewed "how the evidence in this investigation was obtained and [implemented] disciplinary action if warranted." (Id. at 33.) Mr. Lynch states that, if Detective Santiago's supervisors were aware of misconduct in connection with that identification and failed to address it, "that is an extremely serious deficiency calling into question the integrity and the basic functioning of the department's supervisory and disciplinary mechanisms." (Id. at 33.) We find that Mr. Lynch's Report sufficiently discusses the manner in which the PPD was deficient for failing to address Detective Santaigo's improper investigative practices.

The Moving Defendants also argue that Mr. Lynch's Report should be excluded because some of his opinions are legal conclusions. The Third Circuit has explained that "[a]lthough Federal Rule of Evidence 704 permits an expert witness to give expert testimony that 'embraces an ultimate issue to be decided by the trier of fact,' an expert witness is prohibited from rendering a legal opinion." Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 217 (3d Cir. 2006) (quoting United States v. Leo, 941 F.2d 181, 195-96 (3d Cir. 1991)). "Such testimony is prohibited because it would usurp the District Court's pivotal role in explaining the law to the

12

jury." Id. (citing First Nat'l State Bank v. Reliance Elec. Co., 668 F.2d 725, 731 (3d Cir. 1981) (per curiam)). Nonetheless, "the line between admissible and inadmissible expert testimony as to the customs and practices of a particular industry often becomes blurred when the testimony concerns a party's compliance with customs and practices that implicate legal duties." Id. at 218. Thus, an expert on police practices and procedures may testify as to "his knowledge, experience and extensive law enforcement background, the proper police procedures and whether the Defendants failed to follow same, as well as to the prevailing . . . standards" but may not testify regarding "the ultimate legal issues" in a case. Stokes v. Janosko, Civ. A. No. 16-0064, 2018 WL 3361456, at *4 (W.D. Pa. July 10, 2018).

Mr. Swainson maintains that Mr. Lynch's core opinions, which are addressed in his Report and to which he is expected to testify at trial, are admissible and satisfy the requirement of fit:

> 1. Given the extensive publicly reported history of misconduct in the PPD homicide division, PPD's commanding officers would be expected to be aware of that misconduct and the failure to address it communicated to officers that they could engage in misconduct without fear of adverse consequences;
>
> 2. If evidence tending to show a fabrication of Paul Presley's statements and identification is credited, that conduct is a violation of minimally accepted police practices;
>
> 3. If evidence tending to show that PPD followed a policy and practice of withholding activity sheets from the prosecution and a criminal defendant is credited, this practice is a violation of minimally accepted police practices; and
>
> 4. If evidence tending to show that detectives provided false information to prosecutors about Swainson's reasons for traveling to Jamaica and his knowledge that he was a suspect in Opher's murder is credited, the detective's actions violated minimally accepted police practices.

(Resp. at 19-20.) We conclude that these opinions are not impermissible legal opinions and that they would assist the jury in this case and that Mr. Lynch's Report and anticipated testimony therefore satisfy the requirement of fit.[2]

## IV. CONCLUSION

For the reasons stated above, we deny the Moving Defendant's Motion to Preclude the Testimony and Report of Plaintiff's Expert Michael K. Lynch. An order follows.

BY THE COURT:

/s/ John R. Padova
_____
John R. Padova, J.

---

[2] The Moving Defendants specifically contend that Mr. Lynch has opined with respect to the ultimate legal issues in this case because he states in his report that the City's failure to address Detective Santiago's misconduct "was a direct cause of Swainson's harms." (Lynch Rpt. at 29.) Plaintiff does not include this opinion as one of the opinions to which Mr. Lynch is expected to testify at trial. Accordingly, we deny the Motion with respect to this argument. However, Defendants may raise this issue at trial if Plaintiff seeks to offer Mr. Lynch's testimony with respect to this specific opinion.